**March 21, 2016**

# In the Court of Appeals of Georgia

A15A2073. SHEATS v. THE KROGER COMPANY et al.

A15A2074. SHEATS v. THE KROGER COMPANY et al.

MILLER, Presiding Judge.

In this personal injury case, Brenda Sheats sued The Kroger Co. and Clayton Distributing Company, Inc. ("Clayton"), asserting claims based upon product liability, ordinary negligence, and res ipsa loquitur. Sheats also filed a motion for spoliation sanctions, asserting that Kroger destroyed evidence that was essential to her complaint.

In Case No. A15A2073, Sheats appeals from the trial court's order granting summary judgment to Clayton and denying her motion for spoliation sanctions against Kroger. In Case No. A15A2074, Sheats appeals from the grant of summary judgment to Kroger. For the reasons that follow, in Case No. A15A2073, we affirm

the trial court's grant of summary judgment to Clayton, but vacate the trial court's denial of Sheats' motion for spoliation sanctions against Kroger, and we remand this case for further proceedings. In Case No. A15A2074, we affirm the trial court's grant of summary judgment to Kroger on Sheats' product liability and res ipsa loquitur claims, but reverse the grant of summary judgment to Kroger on Sheats' ordinary negligence claim.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We apply a de novo standard of review to an appeal from the grant of summary judgment, construing the evidence in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Walker v. Gwinnett Hosp. System*, 263 Ga. App. 554, 555 (588 SE2d 441) (2003).

Viewed in this light, the evidence shows that, on November 7, 2011, Sheats was shopping at a Kroger grocery store in Athens. Sheats took a cardboard package containing several glass bottles of Red Rock Golden Ginger Ale off of a shelf and placed it in her cart. Sheats then lifted a second pack off the shelf. As she did so, the bottom of the package opened up, all of the glass bottles fell to the floor, and they broke. At least one bottle struck Sheats' left foot, injuring her.

A store security guard was called to the aisle where the incident occurred. Upon arriving at the scene, the guard found Sheats standing among broken glass and spilled liquid and holding an empty cardboard package with a bottom that was "fully broken open[ ]." When Sheats told the security guard what happened, the guard asked Sheats to step away from the debris, and she asked for the package Sheats was holding. Sheats refused and told the guard that she wanted to keep the package as evidence. The guard replied that she would keep the package as evidence instead. Sheats then complained to the guard about pain in her foot. The guard offered to call an ambulance, but Sheats declined, saying that she might go to a doctor later.

The guard escorted Sheats to the customer service counter at the front of the store, where Sheats told the store manager what happened. Sheats then told the manager that her left foot was hurting and she was going to the hospital. The manager completed a three-page "Customer Incident Report & Investigation Check List," which had the following statement printed on each page: "This report is being prepared in anticipation of litigation under the direction of legal counsel. It is confidential and is not to be released to any person unless approved by legal counsel and authorized by a member of Kroger management with such authority." The manager told Sheats that he would forward information about the incident to Kroger's

3

headquarters, but he was not sure if Kroger's insurance would pay for treatment of the injury.

Shortly after the incident, the manager inspected the package and the shelf where it had been displayed and observed that both were dry. According to the manager, "[f]or some unknown reason, the glue on one side of the bottom of the package failed to stay glued to the other flap. I observed that one of the outside bottom flaps was cleanly separated from the other, inside bottom flap, and the glue was only stuck to one flap. It appeared to me that the glue didn't stick sufficiently to the other flap[.]" The manager then inspected all of the other Red Rock Ginger Ale packages on the shelf, but observed no similar problem. After inspecting the package, the manager recorded it, for inventory purposes, as a "lost" item due to breakage and put it with outgoing refuse to be discarded. The manager stated in his affidavit that, when he spoke to Sheats after the incident, he did not get the impression that Sheats would later file a lawsuit.

After leaving Kroger, Sheats went to a hospital emergency room. She was subsequently diagnosed with a blood clot in her left big toe and had to have surgery to remove the toenail. Sheats had to wear a protective shoe for two months after her

surgery. Additionally, her toenail failed to grow back correctly, and she still had pain in her toe at the time of the summary judgment hearing.

Sheats filed this personal injury suit against Kroger and Clayton, setting forth product liability, ordinary negligence and res ipsa loquitur claims. Clayton filed a motion for summary judgment on the ground that Sheats had not provided any evidence to prove that the cardboard package had been defective. Kroger also filed a motion for summary judgment on the same basis. Sheats then filed a motion for spoliation sanctions against both defendants on the ground that Kroger had destroyed essential evidence, i.e., the package.

The trial court granted summary judgment to Clayton and Kroger on Sheat's product liability claims due to her failure to present evidence that the package was defective. It denied Sheats' motion for spoliation sanctions on the ground that she did not provide Kroger with *actual notice* that she was contemplating litigation at the time of the incident. The trial court also granted summary judgment to Kroger on Sheats' ordinary negligence and res ipsa loquitur claims.

*Case No. A15A2073*

5

1. Sheats argues that the trial court erred in denying her motion for spoliation sanctions because, at the time of the incident, Kroger should have reasonably anticipated that she was contemplating litigation. We agree.

(a) *Spoliation sanctions against Kroger*.

Spoliation is "the destruction or failure to preserve evidence" that is relevant to "contemplated or pending litigation." (Citation and punctuation omitted.) *Phillips v. Harmon*, 297 Ga. 386, 393 (II) (774 SE2d 596) (2015). The destruction of evidence "may give rise to the rebuttable presumption that the evidence would have been harmful to the spoliator. However, in order for the injured party to pursue a remedy for spoliation, the spoliating party must have been under a duty to preserve the evidence at issue." Id. at 394 (II). Moreover, a defendant's duty to preserve evidence, is not limited to situations where the plaintiff provides actual or express notice of litigation. Rather,

> [n]otice that the plaintiff is contemplating litigation may also be derived from, . . . other circumstances, such as the type and extent of the injury; the extent to which fault for the injury is clear; the potential financial exposure if faced with a finding of liability; the relationship and course of conduct between the parties, including past litigation or threatened litigation; and the frequency with which litigation occurs in similar circumstances.

6

Id. at 397 (II). "Certainly a trial court has wide discretion in adjudicating spoliation issues, and such discretion will not be disturbed absent abuse. However, an appellate court cannot affirm a trial court's reasoning which is based upon an erroneous legal theory." (Citations omitted.) Id.

In this case, the trial court ruled that the uncontroverted evidence showed that Sheats failed to provide Kroger with actual notice that she was contemplating litigation at the time of her injury. In so ruling, the trial court relied solely on Sheats' deposition, wherein she was asked whether she was contemplating filing a lawsuit when she asked to keep the package, and Sheats answered "No." The trial court's ruling was based on the legally incorrect premise that Kroger's duty to preserve the evidence required actual notice of litigation from Sheats. Consequently, we vacate the denial of Sheats' spoliation motion as to Kroger and remand this case for the trial court to reconsider that motion in light of the correct legal analysis as set forth herein. See *Phillips*, supra, 297 Ga. at 397-398 (II).

(b) *Spoliation sanctions against Clayton*.

Sanctions for spoliation cannot be applied against a party who did not destroy the evidence when there is no evidence to show that the destroying party was acting at the behest of the other party. *Boswell v. Overhead Door Corp.*, 292 Ga. App. 234,

7

235-236 (664 SE2d 262) (2008). It follows that, because there is no evidence to show that Clayton directed Kroger to destroy the package or was even aware of the incident before it was destroyed, the trial court properly denied the motion for spoliation sanctions as to Clayton.

2. Sheats contends that the trial court erred in granting summary judgment to Clayton on her product liability claim on the basis that she failed to present evidence to prove that the package was defective. We disagree.

Regardless of whether the plaintiff proceeds under a theory of strict liability or negligence, the essence of a product liability claim is the presence of an actual defect in the product. *Boswell*, supra, 292 Ga. App. at 235. In order to prevail on such a claim, Sheats must prove that there was a defect in the product *when it left the manufacturer*, the defect was caused by the manufacturer's negligence, and the defect caused her injury. Id.; *Miller v. Ford Motor Co.*, 287 Ga. App. 642, 644 (1) (653 SE2d 82) (2007).

In this case, Sheats was unable to produce the package in order to prove a defect in the design or manufacturing because Kroger had discarded it. As noted above, however, no presumption of a product defect applies to Clayton as a result of such spoliation. See Division 1 (b), supra. Further, although Sheats points to evidence

8

about the condition of the package at the time she removed it from the store shelf, she is unable to prove that there was an original design or manufacturing defect that existed *at the time it left Clayton's possession*. Instead, it is just as likely that the problem that caused the package's bottom flap to open occurred because of something that was not related to its manufacture that occurred at some point *after* the package left Clayton's possession. See *Miller*, supra, 287 Ga. App. at 644 (1); see also *Jenkins v. Gen. Motors Corp.*, 240 Ga. App. 636, 637 (1) (524 SE2d 324) (1999) (finding that there was evidence of several plausible explanations for the vehicle's brakes to fail other than a manufacturing defect). In fact, the evidence shows that none of the other packages of Red Rock Ginger Ale on Kroger's shelf had a problem similar to the one at issue here. Consequently, Sheats cannot meet her burden of proving, by a preponderance of the evidence, that the package was defective when it left Clayton's possession. Thus, the trial court did not err in granting summary judgment to Clayton on her product liability claim.

3. To the extent Sheats argues that the trial court erred in ruling that she was required to present expert testimony on the issue of whether the package was defective, the trial court's order does not show that it issued such a ruling. Accordingly, this alleged error presents nothing for this Court to review. See

9

*Williamson v. Strickland & Smith, Inc.*, 296 Ga. App. 1, 6 (7) (673 SE2d 858) (2005) (this Court will not consider issues that were not ruled upon by the trial court.).

*Case No. A15A2074*

4. Sheats argues that the trial court erred in granting summary judgment to Kroger on her res ipsa loquitur claim. In its order, the trial court ruled that Sheats had failed to establish an essential element of that claim, i.e., that the package had been under Kroger's exclusive control.

The elements of the doctrine of res ipsa loquitur are: (1) an injury which ordinarily does not occur in the absence of someone's negligence; (2) the injury must be caused by an agency or instrumentality within the defendant's *exclusive control*; and (3) the injury was not caused by any voluntary action or contribution on the part of the plaintiff. *Aderhold v. Lowe's Home Ctrs.*, 284 Ga. App. 294, 295 (643 SE2d 811) (2007). "Res ipsa loquitur should be applied with caution and only in extreme cases, and is not applicable when there is an intermediary cause which could have produced the injury." (Citations and punctuation omitted.) Id.

Here, the trial court properly concluded that the package had not been in Kroger's exclusive control because the undisputed evidence showed that the package had been placed on a display shelf and was readily accessible to other customers. See

10

*Aderhold*, supra, 284 Ga. App. at 296 (res ipsa loquitur doctrine did not apply when the undisputed evidence showed that the item at issue was stacked on a shelf within the reach of other customers). Accordingly, the trial court properly granted summary judgment to Kroger on Sheats' res ipsa loquitur claim.

5. Sheats contends that the trial court erred in granting summary judgment to Kroger on her product liability claim based upon a finding that she failed to present evidence to prove that the package was, in fact, defective. Sheats' product liability claim was based upon allegations that Kroger negligently sold a defective and unsafe product and failed to warn customers of the defect. Sheats presented evidence showing that the bottom of the package opened up when she lifted it off the shelf. Sheats is unable to prove, however, that the package opened because of an original manufacturing defect, as opposed to some other cause, such as mishandling during delivery or while stocking the shelf. See Division 2, supra. Consequently, the trial court did not err in granting summary judgment to Kroger on Sheats' product liability claim. See *Miller*, supra, 287 Ga. App. at 645 (1) (plaintiffs could not prevail on their failure to warn claim because that claim was predicated on the allegation that the product at issue had an original manufacturing defect).

11

6. Sheats contends that the trial court erred in granting summary judgment to Kroger on her ordinary negligence claim. She argues, inter alia, that jury issues remain regarding whether Kroger negligently failed to maintain a safe product display.

Pursuant to long-standing Georgia law, "[t]he situation of the retailer and consumer of packed products is properly governed by the rules of negligence law." (Citations and punctuation omitted.) *Howard v. Jacobs' Pharmacy Co.*, 55 Ga. App. 163, 164 (189 SE 373) (1937). Accordingly, retailers owe consumers a duty "to supply goods packed by reliable manufacturers, [which] are without imperfections that may be discovered by an exercise of the care, skill, and experience of dealers in such products generally." (Citations and punctuation omitted.) Id.; see also *Brock v. Simpson*, 103 Ga. App. 800, 801 (1) (120 SE2d 885) (1961); *Fleetwood v. Swift & Co.*, 27 Ga. App. 502, 505 (108 SE 909) (1921).

Here, with regard to the allegedly defective package of Ginger Ale, Sheats presented evidence that the glue on one side of the bottom of the package failed to stay glued to the other flap, one of the outside bottom flaps was cleanly separated from the inside bottom flap, and the glue was stuck to only one flap. Because Kroger discarded the allegedly defective package, it cannot show that the alleged defect was

not reasonably observable, and Sheats cannot show that it was. Consequently, the question of whether Kroger was or was not negligent, and whether Sheats' negligence claim is a jury issue, cannot be determined until the trial court first determines on remand whether spoliation occurred and, if so, which spoliation sanctions are appropriate.

In so holding, we note that, with regard to the spoliation issue, the trial court is authorized to craft a solution that fits the facts. For instance, the trial court may

> (1) charge the jury that spoliation of evidence creates the rebuttable presumption that the evidence would have been harmful to the spoliator; (2) dismiss the case; or (3) exclude testimony about the evidence. This is not an exhaustive list of sanctions [that] a trial court may impose; rather, the trial court has wide latitude to fashion sanctions on a case-by-case basis, considering what is appropriate and fair under the circumstances.

(Citation and punctuation omitted.) *Kitchens v. Brusman*, 303 Ga. App. 703, 709 (1) (c) (694 SE2d 667) (2010).

*Judgment affirmed in part, vacated in part, and case remanded with direction in Case No. A15A2073. Judgment affirmed in part, reversed in part and case remanded with direction in Case No. A15A2074. Barnes, P. J., Ellington, P. J.,*

13

*Dillard, McFadden, and Branch, J. J., concur. Andrews, P. J., concurs fully in Divisions 1 (b), 2, 3, 4, and 5, and dissents as to Divisions 1 (a) and 6.*

A15A2073.  SHEATS v. THE KROGER COMPANY et al.

A15A2074.  SHEATS v. THE KROGER COMPANY et al.


ANDREWS, Presiding Judge, concurring in part and dissenting in part.

1. Under established Georgia law, It is the general rule that a vendor or dealer who is not the manufacturer is under no obligation to test an article purchased and sold by him for the purpose of discovering latent or concealed defects, but that when he purchases and sells an article in common and general use, in the usual course of trade, without knowledge of its dangerous quality, and with nothing tending reasonably to call his attention thereto, he is not negligent in failing to exercise care to determine whether it is dangerous or not.  In such a case he may assume that the

manufacturer has done his duty in properly constructing the article and in not placing upon the market a commodity which is defective and likely to inflict injury. *King Hardware Co. v. Ennis*, 39 Ga. App. 355, 360 (147 SE 119) (1929).

That general rule has some age on it, but it has been consistently followed. See *Fed. Ins. Co. v. Farmer's Supply Store*, 252 Ga. App. 17, 19 (555SE2d 238) (2001); *Thomasson v. Rich Products Corp.*, 232 Ga. App. 424, 426 (502 SE2d 289) (1998); *Sirmons v. Derst Baking Co.*, 221 Ga. App. 127, 128 (470 SE2d 515) (1996); *Brock v. Simpson*, 103 Ga. App. 800, 801 (1) (120 SE2d 885) (1961); *Davis v. Williams*, 58 Ga. App. 274 (2) (198 SE 357) (1938).

In the instant case, there was no evidence to alert anyone, store or customer alike, that the package was defective. Imposition of liability in this case would, in effect, render Kroger an insurer. I believe the circumstances here dictated the trial court's grant of summary judgment for Kroger on the negligence claim.

2. Inasmuch as the trial court properly granted summary judgment for Kroger on the ordinary negligence claim as a matter of law under the venerable line of authority cited above, the discarding of the carton was of no relevance to that cause of action. See *Craig v. Bailey Bros. Realty*, 304 Ga. App. 794, 798 (1) (697 SE2d 888) (2010).

2

*Phillips v. Harmon*, 297 Ga. 386, 393 (774 SE2d 596) (2015), relied upon by the majority, alarmingly expands the situations where a defendant may be charged with notice of anticipated litigation. It seems to place all defendants in a "damned if you do, damned if you don't" posture, with regard to conducting any risk exposure assessment following any injury and the preservation of any item that potentially could have some evidentiary use. But it does not stand for the proposition that where no cause of action exists as a matter of law, the issue of possible spoliation may be tossed to the jury in hopes of creating one.

Accordingly, I respectfully dissent from Divisions 1 (a) and 6 of the majority opinion. I concur with Divisions 1 (b), 2, 3, 4, and 5.